IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Martin Avila,<br><br>        Plaintiff,<br><br>vs.<br><br>Edgefield Federal Prison; Mary Mitchell, *Warden*; Mr. Acosta, *Assist. Warden*; Mr. Collie, *Captain*; Mr. Clark, *Lt.*; Mr. Hollet, *Lt.*; Mr. Neal, *C Unit Manager*; Mr. H. Koger, III, *B Unit Manager*; Mrs. S. Cheek, *B Case Manager*; Mr. J. Bryant, *B Counselor*; Mr. Johnson, *C Counselor*; Mr. Santiago, *SIS*; Mr. Roper, *Unit Officer*; Mr. Upson, *Unit Officer*; Mr. Flores, *Unit Officer*; Mr. Kate, *Unit Officer*; Mrs. Martin, *Unit Officer*; Mr. Green, *Unit Officer*; Mr. Evans, *Unit Officer*; Mrs. Jackson, *Unit Manager*; Mr. Fallen, *Assist. Warden*; Mr. S. Smith, *Recreation*; Mr. T. Nixon; Mr. J. Sullivan; Mr. Spark; Mrs. Lathrop; Mr. L. Morgan, *Unit Officer*; Mr. Wilson, *Unit Officer*; Mr. Burkett, *B*; Mr. Burkett; Mrs. V. Kepner,<br><br>        Defendants. | C/A No. 0:10-2370-HMH-PJG<br><br>**REPORT AND RECOMMENDATION** |

The plaintiff, Martin Avila ("Avila"), a self-represented federal prisoner, filed this civil rights matter pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).[1]  This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion to dismiss

---

[1] In Bivens, the United States Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights.  A Bivens claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983; therefore, case law involving § 1983 claims is generally applicable in Bivens actions.  See Harlow v. Fitzgerald, 457 U.S. 800, 814-20, n.30 (1982); see also Farmer v. Brennan, 511 U.S. 825 (1994).

Avila's Complaint. (ECF No. 43.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Avila of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 44.) Avila responded in opposition to the defendants' motion. (ECF No. 67.) Having carefully considered the parties' submissions and the applicable law, the court finds that the defendants' motion to dismiss should be granted.

## BACKGROUND

The incidents that are the subject of Avila's Complaint[2] have occurred during his incarceration at FCI-Edgefield, an institution of the Bureau of Prisons. Avila alleges that in or about February 2010, he and approximately 100-125 Mexican inmates were moved from the general prison population to a special housing unit ("SHU") due to a fight that occurred among a "few inmates." Avila alleges that the Warden "set out" to do an investigation of the Mexican inmates concerning the fight "to find out who did what." (Compl., ECF No. 1 at 1.) Avila alleges that as a result of this placement he was denied "outside recreation, acess to law books and materials, inmates had to go on food strike, in order to get the officers attention, and to be released back on the compound with other inmates." (Id. at 1-2) (errors in original). Avila asserts that during the six months he was in SHU, none of the Mexican inmates was charged with a disciplinary violation and that the Warden stated that "she was running us 'Mexican' up on lock down." (Id. at 2.) He further appears to allege that he was denied access to the courts while he was in SHU and, as a result, one of his motions in

---

[2] The court observes that Avila's Complaint is virtually identical to the complaints filed by other inmates in C/A Nos. 0:10-02058-HMH-PJG, 0:10-02379-HMH-PJG, 0:10-02467-HMH-PJG, 0:10-02727-HMH-PJG, and 0:10-02728-HMH-PJG.



his criminal appeal was denied. Essentially, Avila appears to allege that he was placed in SHU by the Warden and her staff because he is Mexican.

## DISCUSSION

### A.     Motion to Dismiss Standards

The defendants have moved for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be founded. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

This court is required to liberally construe *pro se* complaints. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*). Such *pro se* complaints are held to a less stringent standard than those



drafted by attorneys, id.; Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. Erickson, 551 U.S. at 93 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).

Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990); see also Iqbal, 129 S. Ct. at 1953 (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

**B.     Official Capacity Claims**

The defendants correctly assert that to the extent Avila seeks damages against the defendants in their official capacities, they are protected by sovereign immunity. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (holding that an official capacity suit "generally present[s] only another way of pleading an action against an entity of which an officer is an agent" and "is, in all respects other than name, to be treated as a suit against the entity") (internal quotations omitted); Doe v. Chao, 306 F.3d 170, 184 (4th Cir. 2002) (observing that "a Bivens action does not lie against either agencies



or officials in their official capacity"). Therefore, the defendants in their official capacities are entitled to dismissal of Avila's claims that seek monetary damages.

C.     **Failure to Comply with Rule 8(a)(2)**

The defendants argue that Avila's pleadings fail to comply with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although the court must liberally construe a *pro se* complaint, the United States Supreme Court has recently made clear that, under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff in any civil action must do more than make mere conclusory statements to state a claim. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Iqbal, 129 S. Ct. at 1949; Twombly, 550 U.S. at 570. The reviewing court need only accept as true the complaint's *factual* allegations, not its legal conclusions. Iqbal, 129 S. Ct. at 1949; Twombly, 550 U.S. at 555.

Expounding on its decision in Twombly, the United States Supreme Court stated in Iqbal:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also Bass v. Dupont, 324 F.3d 761, 765 (4th Cir. 2003).



The defendants argue that Avila's Complaint fails to contain facts specifying any acts taken by the named defendants to allegedly violate his constitutional rights. While the "Warden," Defendant Mitchell, is mentioned in his Complaint, the defendants argue that the claims against her are conclusory and unsupported. With regard to the other listed defendants, the defendants argue that Avila has failed to allege any personal involvement by the defendants in his Complaint.

The court agrees. Avila has failed to make sufficient factual allegations to support his claims against Defendant Mitchell and has made no allegation of any personal involvement on the part of the remaining defendants in connection with any of his claims. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). Moreover, a claim based upon the doctrine of respondeat superior does not give rise to a § 1983 claim. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[3] Iqbal, 129 S. Ct. at 1948.

In Iqbal, the Supreme Court held that Iqbal's Complaint failed to contain sufficient factual allegations to establish a plausible equal protection claim. Iqbal's allegations that the "petitioners

---

[3] As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Iqbal, 129 S. Ct. at 1949. Indeed, the dissent in Iqbal opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [] supervisory liability entirely." Id. at 1957 (Souter, J., dissenting). Moreover, even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisor liable for constitutional injuries inflicted by their subordinates).



knew of, condoned, and willfully and maliciously agreed to subject him to harsh conditions of confinement as a matter of policy, solely on account of his religion, race, and/or national origin and for no legitimate penological interest;" that one of the petitioners was "the principal architect of this invidious policy;" and that the other petitioner "was instrumental in adopting and executing it" were found to be conclusory and not entitled to the assumption of truth. Id. at 1951 (internal quotation marks and citations omitted). Further, the Supreme Court held that Iqbal's factual allegations that "the [FBI], under the direction of [one petitioner], arrested and detained thousands of Arab Muslim men . . . as part of its investigation of the events of September 11" and that "[t]he policy of holding post-September-11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by [the petitioners] in discussions in the weeks after September 11, 2001" did not "nudge his claim of purposeful discrimination across the line from conceivable to plausible." Id. at 1951, 1952 (internal quotation marks and citations omitted). The Supreme Court found that Iqbal's "constitutional claims against petitioners rest solely on their ostensible policy of holding post-September-11th detainees in the ADMAX SHU once they were categorized as 'of high interest.'" Id. at 1952 (internal quotation marks and citations omitted). The Court held that for Iqbal to prevail, his "complaint must contain facts plausibly showing that petitioners purposefully adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin," which it failed to do. Id. Unlike the other defendants, the Supreme Court held that Iqbal did not allege that the petitioners labeled him a person of high interest for impermissible reasons, only that they adopted a policy that "in the aftermath of a devastating terrorist attack, sought to keep suspected terrorists in the most secure conditions available until the suspects could be cleared of terrorist activity." Id.

The allegations in Avila's Complaint are strikingly similar to those in Iqbal's complaint. Therefore, the court finds that Avila's Complaint fails to allege sufficient factual allegations to state a plausible equal protection claim against Defendant Mitchell. As Avila's Complaint contains no factual allegations against the other defendants, all defendants are entitled to dismissal of Avila's equal protection claim.

Similarly, to the extent that Avila's Complaint attempts to raise claims of cruel and unusual punishment, denial of due process, and denial of access to the courts, the court finds that Avila has failed to contain sufficient factual allegations of personal involvement by any of the defendants to state a plausible claim. Therefore, these claims should be dismissed as well.

**D.     Motions to Amend**

Moreover, Avila's motions to amend his complaint fail to cure these deficiencies. While one of his proposed amended complaints contains specific factual allegations against some of the defendants, he still fails to allege sufficient factual allegations to state any plausible claims. Specifically, with regard to Avila's equal protection claims, he alleges that upon receiving information that Mexicans from certain states within Mexico were planning on causing a problem, Defendant Mitchell directed Defendants Acosta and Fallen to change the "C-1 Unit" into a "makeshift" SHU for placement of these Mexicans. Avila states that Defendant Acosta ordered Defendants Collie, Santiago, and Clark to "pick[] up the Mexicans that they identified as being a problem" and that Avila was one of these inmates. (See ECF No. 42 at 3-4.) Even considering these additional facts, Avila has failed to state a plausible equal protection claim. Cf. Iqbal, 129 S. Ct. at 1952 (discussing inadequacies of Iqbal's pleading regarding petitioners' discriminatory state of mind).

One of Avila's proposed amended complaints also alleges that several of the defendants verbally abused him by calling him names, using racial slurs, and making threatening remarks. (ECF



No. 42 at 4, 5, 7.) However, as pointed out by the defendants, verbal abuse, without more, does not infringe on a constitutional right. See McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (stating that "acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"); McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983."); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (*per curiam*) ("Verbal harassment or abuse of the sort alleged in this case [*i.e.*, the sheriff refusing to mail certain legal correspondence for a prisoner and threatening to hang him] is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983."); Henslee v. Lewis, 153 Fed. Appx. 178, 180 (4th Cir. 2005) (*per curiam*) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983") (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)); cf. Hudspeth v. Figgins, 584 F.2d 1345 (4th Cir. 1978) (holding that allegations that a guard threatened to have an inmate killed because he had a suit pending combined with the carrying out of a threat to have the prisoner transferred from unsupervised work detail to supervised work detail was sufficient to state a claim under § 1983).

With regard to Avila's allegations that he was denied access to the courts, he alleges that Defendant Santiago, in additional to using racial slurs, asked him "what makes you think you have a right to a direct appeal[?]" (ECF No. 42 at 4.) He further alleges that several defendants in their official capacities refused to allow him any legal materials or other material necessary to litigate his criminal appeals. (Id. at 5, 6, 7.) However, as stated above, the defendants in their official capacities are entitled to sovereign immunity. Further, these allegations are insufficient to state a plausible constitutional claim for denial of access to the courts. See Lewis v. Casey, 518 U.S. 343, 349, 351-53 & n.3 (1996) (holding that an inmate alleging denial of access to the courts must be able to

demonstrate some actual injury, *i.e.* that a nonfrivolous legal claim had been frustrated or was being impeded); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (stating that in asserting a claim for denial of access to the courts, a prisoner cannot rely on conclusory allegations, but must identify an actual injury resulting from official conduct).

Avila also generally alleges that several of the defendants denied him "basic human needs—e.g. eatable food, exercise, clothing, adequate medical care, and reasonable safety." (ECF No. 42 at 5) (errors in original). This allegation fails to do more than make a mere conclusory statement, which is insufficient to state a claim. See Iqbal, 129 S. Ct. at 1949; Twombly, 550 U.S. at 555; see also Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (stating that to state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials' ") (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)).

## RECOMMENDATION

Even considering Avila's proposed amended complaints, the court finds that Avila has failed to allege sufficient facts to state a plausible claim against the defendants. The court therefore recommends that the defendants' motion to dismiss (ECF No. 43) be granted and Avila's motions to amend be denied (ECF Nos. 42 & 61) as futile.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 30, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).